# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL M. ARROYO, individually, and on behalf of all others similarly situated, <br>     Plaintiff, <br><br>     v. <br><br> MARATHON REFINING LOGISTICS SERVICES, LLC; and DOES 1 through 10, inclusive, <br>     Defendants. | 2:25-cv-11208-DSF-PVC <br><br> Order DENYING Plaintiff Daniel M. Arroyo's Motion to Remand (Dkt. 21) |

Defendant Marathon Refining Logistics Services, LLC (Marathon) removed this action from Los Angeles Superior Court based on, among other grounds, jurisdiction under the Class Action Fairness Act.  Dkt. 1 (NOR).  Plaintiff Daniel M. Arroyo moves to remand.  Dkt. 21 (Mot.).  Marathon opposes.  Dkt. 22 (Opp'n).  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below, Arroyo's motion is DENIED.

## I. Background

Marathon employed Arroyo as a Field Operator from approximately January 2023 to July 2024.  Dkt. 18 (FAC) ¶ 7.  He alleges he was required to perform off-the-clock work before his shift, for which he was not paid.  FAC ¶ 15.  He alleges that the process of parking, walking to the entrance, and clocking into work took fifteen

minutes of unpaid time each workday.  Id.  He claims that during meal periods he was required to keep his radio on, respond to calls, perform routine operational tasks, handle emergency situations, and respond to work-related questions.  Id. ¶ 15-16.  Arroyo alleges that he did not receive any rest breaks for an approximately 18-day period during July 2024.  Id. ¶ 17.  He also alleges that he was not reimbursed for business expenses resulting from use of his own personal cell phone for work purposes and the purchase of items such as uniforms, tools, and safety glasses.  Id. ¶ 18.  Finally, he alleges that his wage statements did not show gross and net wages earned.  Id. ¶ 19.  Arroyo brings this lawsuit on behalf of himself and a putative class of all others similarly situated.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by [the] Constitution and statute[.]" Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  A defendant may remove an action to federal court if the federal court could exercise subject matter jurisdiction over the action.  28 U.S.C. § 1441(a).  "The removal statute is strictly construed against removal jurisdiction" and "[t]he defendant bears the burden of establishing that removal is proper."  Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009).  If a defendant fails to meet its burden of establishing subject matter jurisdiction, the suit must be remanded.  28 U.S.C. § 1447(c).  Generally, doubts as to removability are resolved in favor of remanding the case.  See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-109 (1941); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

A "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is required by [28 U.S.C.] § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."  Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014).

The Class Action Fairness Act (CAFA) gives federal courts jurisdiction over class actions involving at least 100 class members where there is minimal diversity and at least $5 million in controversy. 28 U.S.C. § 1332(d).  "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively." Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).

The "removing party must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the reasoning and underlying assumptions are reasonable."  Jauregui v. Roadrunner Transp. Servs., Inc., 28 F.4th 989, 993 (9th Cir. 2022) (quoting LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1201 (9th Cir. 2015)).  "An assumption may be reasonable if it is founded on the allegations of the complaint."  Arias v. Residence Inn by Mariott, 936 F.3d 930, 925 (9th Cir. 2019).

### III. Discussion

Arroyo challenges Marathon's assertion of jurisdiction under CAFA on two grounds.[1]  First, Arroyo contends Marathon has not sufficiently shown the class size exceeds 100 members.  Mot. at 13. Second, Arroyo argues that the amount in controversy does not exceed $5 million.  Mot. at 14-17.

### A.    Class Size

The class is defined in the FAC as "[a]ll persons who worked for [Marathon] in California" who meet various criteria, "insofar as they are not a Participating Settlement Class Member in McGhee who has released all claims alleged in the instant action[.]"  FAC ¶ 23.  Arroyo challenges Marathon's class size estimates, arguing that the NOR does

---

[1] There is no dispute that there is minimal diversity as required by CAFA. Mot. at 1 ("Plaintiff does not dispute minimal diversity but challenges the putative Class size and that the amount-in-controversy exceeds five million dollars[.]")

not establish that the class size still exceeds 100 members when those covered by the settlement in a related class action, <u>McGhee v. Tesoro Refining & Mktg. Co. LLC</u>, No. 4:18-cv-05999-JSW (N.D. Cal. filed Aug. 17, 2018), are excluded.  Mot. at 13.

Marathon asserts, and Arroyo does not deny, that the <u>McGhee</u> class action covers claims up until July 12, 2024.  Opp'n at 4; Kawano Decl. ¶ 6.  Relying on payroll records for those fitting the class description, Marathon has identified 185 employees who began their employment between July 12, 2025 and February 20, 2026.  Kawano Decl. ¶ 6.  Arroyo does not challenge the class size estimates presented in Marathon's opposition.[2]

The Court is satisfied that Marathon's documentation shows the class size plausibly exceeds 100 members and finds Marathon has established the class size meets the requirement for CAFA jurisdiction.

**B.    Amount in Controversy**

Arroyo contends the amount in controversy does not exceed the jurisdictional threshold of $5 million, arguing that Marathon relies on the incorrect class size and unreasonable assumptions in its calculations.  Mot. at 13.

Arroyo argues that the Court must recalculate the amount in controversy based on the class definition in the FAC, which is narrower than the original complaint that formed the basis for Marathon's removal.  Mot. at 12.  In opposition, Marathon presents evidence and new calculations to support its assertion that, even under the FAC, the amount in controversy is over $8 million, broken down as follows:

| Claim | Amount in Controversy |
|---|---|
| Overtime Violations | $816,960 |
| Minimum Wage Violations | $544,640 |
| Meal and Rest Break Violations | $1,089,280 |

---

[2] In fact, Arroyo's own motion undermines his class size argument, as he uses an estimate of 156 employees to calculate penalties for his waiting time claim.  Mot. at 16.

| | |
|---|---:|
| Waiting Time Penalties | $2,153,069 |
| Wage Statement Penalties | $740,000 |
| Business Expense Reimbursement | $1,106,100 |
| Attorneys' Fees | $1,612,512 |
| **Total** | **$8,062,561** |

Opp'n at 11-16.  Marathon supports its calculations with payroll data contained in a declaration from Marathon's Principal Labor Relations Specialist, Karen Kawano.  Kawano Decl. ¶ 2.[3]

Arroyo argues that Marathon relies on unreasonable assumptions.  Mot. at 13-17.  Because "Arroyo contest[s] the reasonableness of [Marathon's] assumptions, [Marathon] ha[s] the burden of proving by a preponderance of the evidence that its assumptions [are] reasonable."  Harris v. KM Indus., Inc., 980 F.3d 694, 701 (9th Cir. 2020).

Arroyo concedes that Marathon's calculations for the minimum wage, meal period, rest break, and expense reimbursement claims are reasonable.  Dkt. 25 (Reply) at 6;[4] see Mot. at 17-20.  He challenges only the calculations for overtime violations, waiting time penalties, wage statement penalties, and attorneys' fees.  Mot. at 17-20; Reply at 6-9.

---

[3] In his motion, Arroyo objects to much of Marathon's proffered declaration of Karen Kawano submitted with the NOR.  Mot. at 14-15.  However, in opposition to this motion to remand, Marathon relies on information in a new declaration from Kawano.  See Opp'n at 9-11; Kawano Decl.  Arroyo did not challenge this new declaration and accepted many of the assumptions relying on it as reasonable.  Reply at 6.  Because the Court does not rely on the declaration submitted with Marathon's NOR, it need not address Arroyo's arguments challenging it.

[4] Arroyo's Reply contains no page numbers, in violation of Local Rule 11-3.3.  The Court therefore refers to the page numbers contained in the CM/ECF header at the top of the filed document.  Arroyo is admonished to follow the Local Rules in the future.

### 1.   Overtime Violations

Arroyo argues that overtime violations should be excluded from Marathon's calculations for two reasons.  Reply at 6-7.  First, Arroyo argues that the overtime claim is preempted by the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and therefore should be dismissed.  Reply at 6-7.[5]  The Court's jurisdiction follows the operative pleading.  Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 39 (2025).  Here, the FAC contains a claim for overtime violations.  See Dkt. 1-2 (Compl.), ¶¶ 40-48; FAC ¶¶ 40-48.  Arroyo's assertion that there is a basis to dismiss that claim does not change the jurisdictional analysis.  The overtime claim is therefore properly included in Marathon's calculations.

Arroyo also argues that the Court should "assign no value to the claims released under the McGhee Settlement[.]"  Reply at 7.  However, Marathon has already accounted for this overlap in its calculation.  See Opp'n at 12.[6]  Therefore, the Court finds Marathon has met its burden of showing that the overtime claim places approximately $816,960 in controversy.

### 2.   Waiting Time Penalties

In its opposition brief, Marathon bases its amount-in-controversy calculations on the FAC.  See Opp'n at 9-11.  In the FAC, Arroyo alleges:

---

[5] Marathon posits a separate basis for removal that one or more claims is preempted by the LMRA.  NOR ¶¶ 11-33.  In reply, Arroyo concedes that his overtime claim is preempted by the LMRA.  Reply at 2.

[6] The McGhee settlement covers claims up until July 12, 2024.  Opp'n at 4; Kawano Decl. ¶ 6.  Marathon calculates damages for overtime violations using 453 days from July 12, 2024 to October 8, 2025.  Opp'n at 12.  Marathon assumes one hour of unpaid overtime per week and relies on payroll data to find a $69 time-and-a-half hourly rate, which it then multiplies by 185 putative class members hired after the McGhee class period ended.  Id.

6

> [D]uring the relevant time period, Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

FAC ¶ 19.  Waiting time penalties for violations of California Labor Code sections 201 and 202 are assessed under section 203, which "mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days."  Mamika v. Barca, 68 Cal. App. 4th 487, 493 (1998), as modified (Dec. 11, 1998).  The employer has a 72-hour grace period in which to pay wages due upon termination before penalties begin to accrue.  Cal. Lab. Code § 202.

Based on Arroyo's allegations, Marathon identified 127 employees who separated employment on or after July 12, 2024, multiplied that number by their average hourly rate of $51.75, the average hours worked per day of 10.92 hours, and the full 30-day statutory period, resulting in an amount in controversy of $2,153,069.  Opp'n at 9.  Marathon used payroll data and employee headcounts to determine the number of terminated workers, their average hourly rate, and the average amount worked.  Kawano Decl. ¶ 8.

Arroyo challenges the reasonableness of Marathon's assumed 100% violation rate.  Mot. at 17.  He argues that for a 100% violation rate to be a reasonable assumption, he must have alleged that "*all* terminated putative Class Members either *never* received their final paychecks or *all* terminated putative Class Members *always* received their final paychecks thirty days after termination."  Id.[7]

---

[7] Arroyo cites Ruby v. State Farm Gen. Ins. Co., No. C 10-02252 SI, 2010 WL 3069333, at *2-3 (N.D. Cal. Aug. 4, 2010), to argue that, because the FAC alleges only that wages were not paid within 72 hours, some terminated putative class members may have received all wages owed within the 30-day maximum.  Reply at 8.  In Ruby, however, the defendant "point[ed] to

In opposition, Marathon contends that assuming a 100% violation rate is reasonable because Arroyo's waiting time penalties claim is based on the FAC's allegations that Marathon "maintained a systematic, company-wide policy and practice of . . . failing to pay employees all minimum wages, overtime wages, meal period premium wages, and rest period premium wages due within the time period specified by California law."  Opp'n at 9 (quoting FAC ¶ 4(e)). Marathon also points to the allegation in the FAC that "Plaintiff and the Class are entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to thirty (30) days maximum," to show that Arroyo invokes the statutory maximum penalty on a class-wide basis.  Opp'n at 10 (quoting FAC ¶ 66).[8]

Courts within the Ninth Circuit have found the assumption of a 100% violation rate reasonable where the waiting time claim is based on such "pattern or practice" allegations.  See La Grow v. JetBlue Airways Corp., No. 2:24-cv-00518-ODW (SKX), 2024 WL 3291589, at *5 (C.D. Cal. July 3, 2024) (finding 100% violation rate and maximum 30-day recovery period to be reasonable assumptions where the complaint alleged the defendant regularly failed to pay correct wages); Thompson v. La Petite Acad., Inc., No. 2:22-cv-04348-AB (JPRx), 22 WL 5241838, at *3-4 (C.D. Cal. Oct. 6, 2022) (finding assumption of 100% violation rate reasonable where plaintiff alleged the defendant had a policy or practice of failing to pay all wages owed); Marquez v. Southwire Co., LLC, No. 21-cv-252-JGB (SPx), 2021 WL 2042727, at *6 (C.D. Cal. May

---

nothing [in the complaint] indicating that the penalties should be assessed for the full thirty days for every employee who may assert this claim," but assumed a 100% violation rate with no explanation.  Ruby, 2010 WL 3069333, at *2-3.  Here, Marathon justifies its assumption based on information contained in the FAC.

[8] Arroyo does not engage with either of Marathon's arguments in reply. Instead he repeats his assertion that the complaint also permits an assumption that some class members would be entitled to less than the maximum penalty.  Reply at 8.

21, 2021) (finding reasonable an assumed 100% violation rate applied to waiting time penalties where the plaintiff alleged a "pattern and practice" of failing to pay class members the wages owed to them).  At least one district court has likewise found an assumed 100% violation rate for the maximum 30 days where a complaint demands "up to" the maximum penalty.  See Nunes v. Home Depot U.S.A., Inc., No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (finding an assumption of the maximum penalty reasonable where the complaint demanded "up to thirty days of pay as penalty" for the plaintiff's waiting time claim).

Here, it is consistent with the complaint to assume that each separated employee suffered at least one instance of the varieties of underpayment alleged in the FAC to be "a systematic, company-wide, policy and practice."  It is also reasonable to assume that Marathon did not rectify those alleged underpayments within 30 days of separation, particularly where Arroyo seeks penalties for up to the 30-day maximum allowed by statute.  The Court therefore finds that an amount in controversy of $2,153,069 for Arroyo's waiting time penalties claim is supported by reasonable assumptions.

The amounts in controversy for Arroyo's overtime violation and waiting time penalties, together with the uncontested amounts in controversy for Arroyo's minimum wage, meal period, rest break, and expense reimbursement claims, total $5,710,049.  Because this amount exceeds the $5 million jurisdictional threshold under CAFA, the Court need not analyze the amounts in controversy for Arroyo's wage statement penalties and associated attorneys' fees.[9]

## IV. Conclusion

For the foregoing reasons, Arroyo's motion to remand is DENIED.

---

[9] Because removal was proper based on jurisdiction under CAFA, the Court need not address Arroyo's arguments challenging Marathon's separate basis for removal under the LMRA.  See Mot. at 3-9; NOR ¶¶ 11-33.

IT IS SO ORDERED.

Date: March 31, 2026

Dale S. Fischer
United States District Judge